CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
APR 18 2006
JOHN F. CORCORAN, CLERK
BY: H McDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| HERBERT T. ROSS, | ) | |
| Plaintiff, | ) | Civil Action No. 7:05cv00590 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| SGT. NANCY ROSE, | ) | By: Jackson L. Kiser |
| Defendant. | ) | Senior U.S. District Judge |

The plaintiff, Herbert T. Ross, a Virginia inmate proceeding pro se, has filed this action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Ross alleges that on October 9, 2003, the defendant utilized an excessive amount of force to subdue him in violation of his Eighth Amendment rights. Plaintiff seeks $15,000 in damages.

This matter is now before the court, on Defendant Sgt. Nancy Rose's motion for summary judgment. The court notified plaintiff of the defendant's motion as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and advised plaintiff that his failure to reply to the defendant's motion may result in dismissal and/or summary judgment being granted for the defendant. Plaintiff has now filed his response to the defendant's motion; thus, the matter is ripe for disposition.

After reviewing plaintiff's complaint, I find that there is no question of material fact and that the defendant is entitled to judgment as a matter of law. Accordingly, I will grant defendant's motion for summary judgment. Moreover, I find that Ross' claims are factually frivolous and, therefore, dismiss his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I.

Ross admits that on October 9, 2003, he began kicking his cell door because he was upset that outdoor recreation had been cancelled. Ross refused to obey orders to stop kicking the cell

door; and, accordingly, a team of correctional officers was dispatched to his cell to place him in ambulatory restraints. Ross claims he peacefully submitted to having his hands restrained behind his back and his ankles shackled. Ross was then walked to the bed in his cell and was ordered to sit, so that the ambulatory restraints could be fastened. Ross claims that while he was seated, a correctional officer pulled his arm and said "come-on." Ross claims he interpreted this as an order to stand, so he stood. He then alleges that as he reached an upright position, Sgt. Rose began cursing at him and "busted" him in the face, causing his left eye to split open. He then claims that he tried to explain to her that he only stood because another correctional officer pulled his arm, but she refused to hear his explanation and, instead, hit him again. As Sgt. Rose attempted to strike him a second time, Ross alleges he turned his face to the side causing Sgt. Rose's thumb to hit him in the mouth. Ross then claims that another correctional officer ordered Sgt. Rose to stop hitting Ross, and yet another correctional officer began wiping the blood from Ross' face and mouth. Once Ross was fully secured in ambulatory restraints, a nurse was called to examine him, but Ross refused any medical treatment and specifically told the nurse he was okay. However, Ross claims that after the officers left his cell, he noticed that he was bleeding and asked another inmate to file an emergency grievance stating that Ross needed medical attention. But, Ross admits that he made no further requests for medical attention or treatment related to his purported injuries.

In support of her motion for summary judgment, the defendant attached her own affidavit and the affidavit of Lt. Mullins. Although neither affidavit denies there was a confrontation between Ross and Sgt. Rose, both aver that Ross caused the confrontation by moving to an upright position while officers were putting him in ambulatory restraints and by biting Sgt.

2

Rose's finger. Specifically, they state that once Ross was seated on the bed, correctional officers began releasing the handcuffs which restrained Ross' hands behind his back so that they could reposition the cuffs in front of his body and apply the ambulatory restraints. However, without warning or any instruction to do so, Ross jumped up from the bed. Sgt. Rose placed her right hand on Ross' shoulder to hold him down, and Ross bit her thumb. She then states that in a reflexive response, she slapped Ross and stated, "You bit me." Ross was then forced against the wall and back onto the bed, and Sgt. Rose left the cell and proceeded to the medical unit.

In response to the defendant's motion for summary judgement, Ross asserts that the institutional video recording of his placement in restraints on October 9, 2003, and Sgt. Rose's medical records, support his claims that Sgt. Rose used excessive force in subduing and restraining him and that her thumb was bruised when she hit him, rather than injured as a result of him biting her. The court finds that Sgt. Rose's medical records offer no support for plaintiff's claim that he did not bite Sgt. Rose, but instead she bruised her finger on his mouth as she hit him. Those records reveal that Sgt. Rose informed medical personnel, immediately following the incident, that as Ross was being placed in ambulatory restraints he bit her thumb, and that no further diagnostic determination of what caused the injury to her thumb was made.

The video recording of the October 9, 2003 incident begins as Ross was placed on his bed, with his ankles shackled and his hand cuffed behind his back. At that time, an officer was standing on either side of Ross and each officer had a restraining hand on one of Ross' shoulders, as other officers removed Ross' personal property from his cell. Despite Ross' screamed threats, obscenities, and efforts to incite other inmates to begin to riot, correctional officers remained calm, quiet, and respectful of Ross and his property. After Ross' property was removed,

3

additional officers, including Sgt. Rose, entered the cell to place Ross in ambulatory restraints. Ross was told to remain seated. As the correctional officers began to release his handcuffs so that his hands could be repositioned in front of his body, without any warning, Ross jumped up from the bed. The officers reacted immediately, began pushing Ross back towards the bed, several officers told him to "sit down," and within seconds Ross was once again seated and the ambulatory restraints were fastened.

Immediately prior to and throughout the incident, Ross continued to shout obscenities, make threats, identified himself as a "south side...soldier," and encouraged his other "soldiers" to begin rioting. Ross continued his rants after he was seated, but also began to scream accusations that the correctional officers restraining him had beat him and threw him up against the wall and that his face was bleeding. But, he stated that was "all gravy" as the incident had been recorded and that the recording would document the assault and his injuries. However, the recording clearly shows that after the alleged assault, Ross' face had no visible signs of injury. Specifically, Ross had no open facial wounds nor were there any signs of blood, redness, bruising, or swelling. Additionally, once the restraints were fully secured, a nurse approached Ross' cell, but Ross refused medical attention and told the nurse he was "okay." Further, moments later, as the remaining correctional officers left his cell, Ross was laughing, smiling, and voiced no further complaints of injury or discomfort.

## II.

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. Ross v.

4

Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 47 U.S. 242 (1986).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the adverse party's pleadings. Instead, the adverse party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Fed. R. Civ. P. 56(e). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the adverse party.

Ross claims that the Sgt. Rose violated his right to be free from cruel and unusual punishment by hitting him without cause on October 9, 2003, as he was being placed into ambulatory restraints. The defendant concedes that she hit Ross during the October 9, 2003 incident; but argues that she only hit Ross in a reflexive response to him jumping up and biting her. Moreover, defendant contends that Ross suffered no injuries as a result of the force used and, therefore, is not entitled to any relief.

To establish an Eighth Amendment excessive force claim against a prison official, an inmate must satisfy a two-pronged standard comprised of both a subjective inquiry (whether the defendant acted with a sufficiently culpable state of mind) and an objective inquiry (whether the harm plaintiff suffered was sufficiently serious enough to amount to a constitutional violation). Williams v.

Benjamin, 77 F.3d 756, 761 (1996).

The subjective component of an excessive force claim requires an inmate to demonstrate that the force used by an institutional official, "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillian, 503 U.S. 1, 7 (1992). In evaluating such a claim, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting Whitley v. Albers, 475 U.S. 312, 32-21 (1986)). The Supreme Court and the Fourth Circuit have set out the following factors to consider in determining whether a prison official acted maliciously and sadistically: "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (1992) (quotations omitted); Williams, 77 F.3d at 762.

Also, the inmate must prove the corrections official's actions were "'objectively harmful enough' to offend 'contemporary standards of decency.'" Stanley v. Hejirika, 134 F.2d 629, 634 (4th Cir. 1998) (quoting Hudson, 503 U.S. at 8). Although there is no requirement that an inmate suffer "serious" or "significant" pain or injury to demonstrate that a malicious or sadistic use of force was employed, he must allege "more than a de minimis pain or injury." Norman v. Taylor, 25 F.3d 1259, 1263 n. 4 (4th Cir. 1994). "[A]bsent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998). However, a de minimis physical injury may amount to an Eighth Amendment violation if the force used was of the sort "repugnant to the conscience of mankind." In Norman v. Taylor, the Fourth Circuit stated:

6

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,'" and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

25 F.3d at 1263, n. 4 (citations omitted).

According to Ross, while he was peacefully submitting to being placed in ambulatory restraints on October 9, 2003, a correctional officer pulled his arm and told him to "come on," Ross interpreted this as an order to stand, and, as he stood, Sgt. Rose began to hit him in the face. He further claims that after she struck him the first time, he turned sideways to avoid a second blow, causing her thumb to hit his mouth. Ross claims that as a result of Sgt. Rose's attack his face was "busted" open and he had a large, bleeding cut under his left eye. However, the video recording of Ross' placement in restraints depicts a drastically different version of the incident.

The video recording shows that while Ross was being placed in ambulatory restraints he continuously ranted and screamed obscenities, made threats directed at the guards restraining him, and encouraged other inmates to begin rioting. However, the guards remained calm and respectful while attempting to place him in restraints. As the guards released Ross' handcuffs to reposition his hands in front of his body, Ross stood. Defendants contend that as he stood, Ross bit Sgt. Rose, and in response she slapped him. Although Ross claims that the only reason he stood was because a correctional officer pulled his arm and told him to "come on," no such movement or statement is visible or audible on the video. Moreover, as soon as Ross began to stand, officers immediately ordered him to remain seated, but Ross ignored their orders and continued to rise. Accordingly, the court finds there is nothing in the video which supports Ross' contention that he was told to stand

7

up nor was there any reason for him to continue to rise after being directed to remain seated. Further, although Ross immediately began complaining that his face was cut and bleeding, the video recording clearly establishes that Ross had no injuries, facial or otherwise, as a result of the confrontation. Additionally, Ross specifically told the nurse dispatched to examine him for any injuries that he was okay and did not need any medical attention

Although Ross alleges that while he was being placed in restraints Sgt. Rose repeatedly punched his face causing an open wound, Ross had no signs of injury following the confrontation, refused a medical exam, and informed the nurse he was okay. Accordingly, the court finds that the injuries Ross alleges to have suffered are de minimis and do not amount to a constitutional violation. See Stanley, 134 F.3d at 637-38 (finding a constitutionally insignificant injury where medical records did not substantiate prisoner's claims).

Additionally, Ross has failed to allege any facts which establish those extraordinary circumstances on which a plaintiff can prevail on an excessive force claim when he suffers only de minimis injury. Taylor, 155 F.3d at 483. "[N]ot...every malevolent touch by a prison guard gives rise to a federal cause of action." Riley v. Dorton, 115 F.3d 1159, 1167 (4th Cir. 1997). And merely a lack of due care for the prisoner's interests and safety fails to show the use of force which is "repugnant to the conscience of mankind." See Whitley v. Albers, 475 U.S. 312, 319 (1986)(finding that the infliction of pain in the course of a prison security measure, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense).

Ross admits that prior to officers entering his cell to place him in restraints, he refused to obey direct orders to stop kicking his cell door. The video recording also clearly depicts Ross

8

screaming obscenities, threatening guards, and attempting to incite other inmates to become disruptive. Further, the video establishes that while Ross' restraints were being removed, so his hands could be repositioned in front of his body, he stood up without being ordered to do so and, thereafter, failed to obey direct orders to remain seated. Accordingly, based on Ross' behavior, Sgt. Rose could have reasonable interpreted his movements to be physically threatening and determined that some use of physical force was necessary to subdue him. And, as some degree of force can be reasonably applied in attempting to restrain an inmate, I find that even if Sgt. Rose hit Ross twice as he was rising, that was not such an extreme use of force to be considered "repugnant to the conscience of mankind." Id; see Norman, 25 F.3d at 1263, n. 4.

### III.

Under 28 U.S.C. § 1915(e)(2)(B)(ii), the court may dismiss a complaint upon a finding that the action is "frivolous or malicious." 28 U.S.C. §§ 1915(e)(2)(B)(ii). A finding of frivolity can be made when the complaint lacks any basis in either fact or law. Denton v. Hernandez, 504 U.S. 25, 31 (1992). Thus, the court may dismiss a claim as "factually frivolous" under § 1915(e) if the facts alleged are clearly baseless. Id.; also see Nasim v. Warden, Maryland House of Corrections, 64 F.3d 951, 955 (4th Cir. 1995). As described above, there is no factual basis for Ross' claims against Sgt. Nancy Rose; accordingly, I find these claims should be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii).

### IV.

Based on the foregoing analysis, I find that the plaintiff has failed to present any issue of

9

material fact and that the defendant is entitled to judgment as a matter and, therefore, grant defendant's motion for summary judgment. Furthermore, I find that the there exists no factual basis for plaintiff's complaint, and, therefore, dismiss this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Ross is hereby advised that this dismissal shall be considered a "strike" pursuant to 28 U.S.C. § 1915(g).

The Clerk of the Court is directed to send a certified copy of this Opinion and accompanying Order to plaintiff and to counsel of record for the defendants.

ENTER: This 18th day of April, 2006.

Jackson L. Kiser
Senior United States District Judge

10

Case 7:05-cv-00590-JLK-mfu   Document 26   Filed 04/18/06   Page 10 of 10   Pageid#: 147